**MORTGAGE CONSULTANTS,
INC., Appellant,**

v.

**Daniel F. MAHANEY, Appellee.**

No. 45S03–9503–CV–00349.

Supreme Court of Indiana.

Sept. 19, 1995.

⚖65(1)

Glenn J. Tabor, Roger A. Weitgenant, Blachly, Tabor, Bozik & Hartman, Valparaiso, Kathryn D. Schmidt, Burke, Murphy, Costanza & Cuppy, Merrillville, for appellant.

Timothy G. Kline, Goodman, Ball & Van Bokkelen, Highland, for appellee.

ON PETITION TO TRANSFER

SELBY, Justice.

This appeal concerns whether the trial court erred in granting summary judgment in favor of Mahaney on his claim for wages and damages as an employee under Ind.Code § 22–2–5–2. We hold that because there is a genuine issue of material fact with respect to whether Mahaney was an employee or an independent contractor, the trial court erred in granting summary judgment. We affirm the granting of summary judgment with regard to the amount of commission owed to Mahaney.

I.

Summary judgment is inappropriate when there is a genuine issue of material fact, or when the moving party is not entitled to judgment as a matter of law. Ind.Trial Rule 56(C). We carefully scrutinize grants of summary judgment to ensure that the non-movant has not been improperly denied his or her day in court. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 365. We construe all pleadings, affidavits and testimony liberally and in the light most favorable to the non-moving party. *Id.* at 366. "Where material facts conflict or undisputed facts lead to conflicting inferences, summary judgement is inappropriate, even if the court believes the non-moving party will not succeed at trial." *Id.* at 366.

II.

In October 1992, Daniel F. Mahaney (Mahaney) and Mortgage Consultants, Inc. (MC) entered into an "Independent Contractor Agreement" (contract) under which Mahaney acted as a broker to procure residential mortgage clients for MC. Mahaney worked for commissions based upon the origination fees of the mortgages he procured. In November 1992, Mahaney allegedly communicated to MC that he no longer intended to fulfill the contract. On December 5, 1992, MC sent Mahaney an eviction notice, ordering Mahaney to vacate the office provided to him by MC. Mahaney received this letter on December 8, 1992.

Mahaney alleges in count I of his complaint that MC breached its contract with him through its failure to pay $12,444.88 in commissions due under the contract. In count II, Mahaney claims that as an "employee" he is entitled to liquidated damages totalling $24,889.76 pursuant to Ind. Code § 22–

2–5–2. The trial court entered summary judgment in favor of Mahaney, in the amount of $34,083.89. In an unpublished opinion, the Court of Appeals affirmed. We affirm in part, and reverse in part.

### III.

In count II of his complaint Mahaney requests liquidated damages pursuant to Indiana Code § 22–2–5–2 (1993), which provides:

> Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for non-payment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

MC contends that a genuine issue of material fact exists as to whether Mahaney was an employee or an independent contractor. We note at the outset that Mahaney does not contend that he did not sign the contract describing him as an independent contractor. The contract is titled, in large bold print, "Independent Contractors Agreement." Part 1 of the contract states in relevant part:

> [Mahaney] acknowledges that he/she is an independent contractor and will be considered a soliciting broker under applicable revenues rulings of the Internal Revenue Service, and this Agreement does not constitute an employee/employer relationship in any way.

However, our inquiry does not end with the contract because the relief available under Chapter 5 is limited to "employees." Only if Mahaney acted as an employee can he recover liquidated damages pursuant to section 2.

Chapter 5 does not define "employee" or "wages." The term "employee," however, is a term of art with a distinct meaning at common law. Since Ind.Code § 22–2–5 does not suggest a different meaning, we interpret the statutory term "employee" in accord with the common-law conception of employees (historically referred to as "servants").[1]

In contrast to employees, generally "an independent contractor controls the method and details of his task and is answerable to the principal as to results only." *Detrick v. Midwest Pipe & Steel, Inc.* (1992), Ind.App., 598 N.E.2d 1074, 1077. The Restatement (Second) of Agency § 220 (1958), explains:

> (1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.
>
> (2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
>
> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;

---

1. For example, in *Truelove v. Truelove* (1909), 172 Ind. 441, 86 N.E. 1018, 1019, *modified,* 88 N.E. 516, we held:

    While it is true that the descent and distribution of property in this State is governed entirely by statute, it is also true that in the construction of said statutes and in determining the meaning of the words and the terms employed, we are to look to the meaning attached to such words and terms by the common law. Statutes which are intended to remedy defects in or supersede the common law must be read and construed in the light of that law. When words of a definite signification under the common law are used in such statutes, and there is nothing to show that they are used in a different sense, they are deemed to be employed in their known and defined common-law meaning.

    *Id.* at 444, 86 N.E. 1018.

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Under this test, all factors must be assessed and no factor is dispositive. *See, e.g., Nationwide Mut. Ins. Co v. Darden,* 503 U.S. 318, 324, 112 S.Ct. 1344, 1348–49, 117 L.Ed.2d 581 (1992). Moreover, this list of factors is not exhaustive.[2] Generally, whether one acts as an employee or an independent contractor is a question of fact. *Detrick,* 598 N.E.2d at 1077. Thus, the Court of Appeals correctly notes that an "employer-employee relationship may be found … despite the parties' designation of independent contractor status, if enough of the indicia of an employer-employee relationship exists."

Notably, statutory claims and claims based in tort differ from claims based in contract. In interpreting a contract, the court examines the parties' intent at the time the contract is written. *Kelly v. Smith* (1993), Ind., 611 N.E.2d 118, 121. Generally, where the parties' intent can be clearly ascertained by the contract's language, courts recognize and enforce the parties' agreement. *Myers v. Myers* (1990), Ind., 560 N.E.2d 39, 44. However, Mahaney's claims in this case involve more than contractual claims; count II constitutes a *statutory* claim. Regarding Mahaney's statutory claim, the parties' contractual agreement that Mahaney acted as an independent contractor, while significant, is not dispositive. *E.g., Ward v. Atlantic Coast Line R.R.,* 362 U.S. 396, 400, 80 S.Ct. 789, 792, 4 L.Ed.2d 820 (1960) (per curiam) ("[N]either the railroad's communication of its concept of petitioner's status to petitioner, nor his acquiescence therein, if shown, is determinative of the issue. The parties' characterization is but one factor to be considered among others, and the issue is one for determination by the jury on the basis of all the relevant factors.") (citations omitted). By applying the Restatement test, we look at the totality of the circumstances to insure that persons subject to the hiring party's control and working as employees receive protections mandated by statute. Therefore, while the parties' clear expression of intent normally controls in questions involving employment contracts, it is but one factor of many considered in determining whether a hired party is entitled to statutory benefits, unless the statute indicates otherwise.

For example, in *Rensing v. Indiana State University Board of Trustees* (1983), Ind., 444 N.E.2d 1170, 1173, we held that a varsity football player was not an employee within the meaning of the Workmen's Compensation Act. That Act provides in part:

'Employee' means every person, including a minor, in the service of another, under any contract of hire or apprenticeship, written or implied, except one whose

**2.** We note that the Restatement test is substantially similar to the seven-factor test applied by the courts below in this case, in which the following factors are considered:

(1) right to discharge; (2) mode of payment; (3) supplying of tools by employer; (4) belief by the parties in the existence of a master-servant relationship; (5) control over the means used or result reached; (6) length of employment; and (7) establishing of work boundaries.

*See also Detrick,* 598 N.E.2d at 1077. The common-law test adopted by the United States Supreme Court considers similar factors, focusing on

the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52, 109 S.Ct. 2166, 2178, 104 L.Ed.2d 811 (1989).

employment is both casual and not in the usual course of the trade, business, occupation or profession of the employer.

Ind.Code § 22–3–6–1(b) (1993). We stated that "while a determination of the existence of an employee-employer relationship is a complex matter involving many factors, the primary consideration is that there was an intent that a contract of employment, either express or implied, did exist. In other words, there must be a mutual belief that an employer-employee relationship did exist." *Id.* at 1173. *Rensing* is distinguishable from this case. The parties' intent was central to our analysis in *Rensing* based upon the statutory definition of "employee" and its emphasis on the existence of a contract, not the common-law conception of employee status. *See also Hale v. Kemp* (1991), Ind., 579 N.E.2d 63, 67 (distinguishable on same ground). Nothing in Ind.Code § 22–2–5–2 suggests that the parties' intent is determinative, or even a primary consideration that should be given greater weight than the hiring party's general ability to control the hired party.

■ Though we agree generally that an employer-employee relationship may be found despite intent to create only an independent contractor relationship if enough indicia of an employer-employee relationship exist, we disagree with Mahaney that this proposition controls at summary judgment. The parties' beliefs as to Mahaney's status, the method of payment, and MC's control over the methods used to secure mortgage clients are material in determining whether Mahaney acted as an independent contractor. The contract itself creates a genuine issue of material fact as to the parties' beliefs regarding Mahaney's status. Mahaney explicitly agreed to an independent contractor-principal relationship and acknowledged MC's intent not to create an employer-employee relationship. MC also identifies a genuine issue of material fact regarding MC's control over Mahaney's methods. Errol Gerstler (Gerstler), the MC business development manager who executed the contract with Mahaney, averred that Mahaney was "allowed to use his own methods in performing his responsibilities . . . ." Additionally, the meth-

od of payment under the contract was a commission based on a percentage of deals originated. Thus genuine issues of material fact exist as to factors (a), (g) and (i) of the Restatement test for employment status.

Moreover, we are not persuaded by the authorities cited by Mahaney. Mahaney argues that *Furr v. Review Board of Indiana Employment Security Division* (1985), Ind. App., 482 N.E.2d 790, supports finding him an employee. In that case, however, the Board deemed Furr engaged in "employment" only after an evidentiary hearing. *Id.* at 791, 792 n. 2. In addition, the statute at issue provided a detailed definition of "employment" which was interpreted as "preferring a finding of covered employment unless the tests for exclusion are strictly met." *Id.* at 792, 794. Mahaney's reliance upon *Stone v. Pinkerton Farms, Inc.*, 741 F.2d 941 (7th Cir.1984) is equally misplaced. In that decision affirming the trial court's grant of summary judgment, the Seventh Circuit stated, "[a]n employer-employee relationship may be found even though the parties define their relationship as one of principal-independent contractor if enough of the indicia of a master-servant relationship are present." *Id.* at 945 That case differs from the instant case, however, in that the Seventh Circuit explicitly held that no facts existed from which to infer that an employer-employee relationship existed. *Id.* Evidence pertaining to each factor supported finding that the alleged tortfeasor was an independent contractor, not the defendant's employee. *Id.* In the absence of any evidence tending to suggest that the relationship was one of employer-employee, the Seventh Circuit affirmed the district court's grant of summary judgment to the defendant, who could not be held liable for the acts of an independent contractor. *Id.* at 945–46.

Such is not the case here where genuine issues of material fact exist as to the beliefs of the parties, payment of Mahaney by commission, and MC's control over Mahaney's methods in brokering mortgages. We therefore hold that the trial court erred in granting summary judgment to Mahaney as to count II of his complaint.

## IV.

We agree with the Court of Appeals that there is no genuine issue of material fact as to count I of Mahaney's complaint, which involves the commissions owed to Mahaney under the contract.[3] The trial court held that MC provided notice of termination of the contract on December 8, 1992, and that the contract terminated thirty days later on January 7, 1993. As such, the court awarded Mahaney forty-five percent (45%) commissions for all mortgages he closed on or before January 7, 1993, and ten percent (10%) commissions for all mortgages originated by Mahaney and closed after January 7, 1993.

MC argues that the contract terminated prior to December 8, 1992, that Mahaney was not entitled to any commissions under the contract because of his alleged misconduct, and that he was awarded more than provided by the contract. MC argues that the contract may have been terminated earlier than December 8, 1992, because Mahaney allegedly informed Gerstler in early November, 1992 that he would not be fulfilling his contract. Ironically, MC argued in the hearing on summary judgment that the letter received by Mahaney on December 8, 1992 should determine the date of termination. In fact, MC admits that it believed that the contract was in effect until December, when Gerstler sent

Mahaney an eviction notice to "notify him of [MC's] intent to terminate his Independent Contractor Agreement." As such, MC cannot now claim that a genuine issue of material fact exists as to whether the letter received by Mahaney on December 8, 1992 provided notice of termination of the contract.

MC observes that the contract "provides that if the agreement is terminated due to misconduct, Mahaney is entitled to no commissions."[4] MC claims that Mahaney committed "misconduct" in contacting lenders directly, and that he is therefore not entitled to commissions under the contract. We disagree. Mahaney's improper contact of lenders does not rise to the level of "misconduct" that would justify a forfeiture. Moreover, though the affidavit of MC's business development manager suggests that such contact took place in October, 1992, MC submitted no evidence that its termination of the contract was based upon that alleged contact.

Finally, we find unpersuasive MC's contention that the trial court improperly granted Mahaney a fifty percent (50%) commission, since the judgment explicitly provides for a forty-five percent (45%) commission for those accounts closed through January 7, 1993, in accordance with the contract. MC's cursory

3. The contract provides, in relevant part:

MC hereby enters into this agreement with the BROKER and the BROKER hereby accepts the terms of this agreement for a period of TWO YEARS. Beginning on 6 October 1992....
A. This agreement can be terminated with a (Thirty Day) notice by either party.
B. This agreement may be terminated prior to it's [sic] expiration date as hereinafter provided.
....
*PART 5. COMPENSATION*
As compensation for services rendered the BROKER shall receive after costs the following percent or percentages of the gross fees:
Gross commission or commissions charged in the form or origination or overage paid by the lender only, on closed and received fees by MC, INC. Commission structure will be as follows:
A.) 45% of all deals originated and cashed with [fee] recieved [sic] by MC, Inc.
....
Compensation if terminated voluntarily or involuntarily will be mutually agreed upon accordingly. The amount of work necessary

to follow up the cases after separation, is deemed indeterminable, therefore, the BROKER agrees to accept 10% of the net fees on all remaining files to be paid on the usual semi-monthly fashion....

4. The contract provides in part:

This AGREEMENT may be terminated by MC with or without cause. The parties agree that this is effective immediately, and the following conditions apply:
....
B.) Discharge due to fraud, embezzlement, misconduct, will result in the forfeiture of any and all commissions. The application of these commissions may or may not be used toward these or other damages caused or related to the BROKER. This may include any and all additional costs incumbered by MC in the course of conducting business. This in no way releases the BROKER from other damages, or rights that MC may have in regards to these aforementioned actions.
C.) Termination whether voluntary or involuntary will be treated the same in regards to compensation.

argument on this point fails to identify any error in the calculation of the award. Though it is true, as contended by MC, that the trial court did not address the amount MC had already paid Mahaney, this is inapposite. Mahaney admits that he has received a check partially compensating him, but he has declined to negotiate the check until this litigation is resolved. This undisputed fact does not constitute a genuine issue of material fact that would preclude summary judgment.[5] Thus we conclude that no genuine issue of material fact exists with regard to count I, and that Mahaney is entitled to summary judgment on this count as a matter of law.[6]

We therefore vacate the opinion of the Court of Appeals. The judgment of the trial court is reversed in part, and affirmed in part. We remand to the trial court for further proceedings in accordance with this opinion.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.

---

5. MC now argues that the agreement permitted it to terminate Mahaney with or without cause immediately, without providing thirty days of notice. MC did not argue this to the trial court, and thus the argument is waived. Alternatively, we conclude that this argument lacks merit. The contract explicitly required thirty days of notice before termination, but permitted MC to provide notice of and then terminate Mahaney with or without cause any time after the agreement became effective.

6. Based upon the grant of summary judgment to Mahaney, MC claims that the trial court denied MC its day in court, in violation of Ind. Const. art. I, § 12. We reject this argument as it pertains to count I, the breach of contract claim, since we conclude that summary judgment as to this count is proper. We need not reach this constitutional argument with respect to count II, Mahaney's statutory claim, since we reverse the summary judgment on that count on other grounds.