# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 19 2019, 9:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Matthew S. Clark | Theodore L. Stacy |
| Schererville, Indiana | Valparaiso, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Porter County Sheriff's Department,

*Appellant-Defendant,*

v.

Brooks C.C. Willmon,

*Appellee-Plaintiff.*

March 19, 2019

Court of Appeals Case No. 18A-CT-1699

Appeal from the Porter County Superior Court

The Honorable Roger V. Bradford, Judge

Trial Court Cause No. 64D01-1202-CT-1941

**Bailey, Judge.**

# Case Summary

[1] Brooks C.C. Willmon ("Willmon")—a former inmate of the Porter County Jail (the "PCJ")—sued the Porter County Sheriff's Department ("Sheriff"), alleging that he developed a wound in the PCJ due to negligence attributable to Sheriff. Sheriff filed a motion for summary judgment, arguing—among other things—that Sheriff was entitled to immunity because any negligence was attributable to employees of an independent contractor. The motion was granted in part and denied in part. Sheriff appeals, claiming Willmon cannot prevail on any theory of negligence—whether medical malpractice or general negligence. Willmon cross-appeals, claiming Sheriff is not entitled to immunity. Concluding that the trial court improvidently granted partial summary judgment in favor of Sheriff, we affirm in part, reverse in part, and remand for further proceedings.

# Facts and Procedural History

[2] In February 2012, Willmon filed a lawsuit against Sheriff alleging that Willmon was a paraplegic who was incarcerated in the PCJ in 2010.[1] The complaint alleged that Willmon had been confined in a padded cell without a wheelchair, and that due to this confinement, he developed "infected sores and wounds requiring multiple surgical interventions," causing bodily injury, suffering, and

---

[1] The complaint named additional defendants, but Willmon later "conceded that the cause of action" against those defendants "should be dismissed." App. Vol. IV at 245.

other damages.[2] App. Vol. II at 76. The complaint alleged that Sheriff and its employees had "a duty to provide [Willmon] with reasonably adequate medical care and attention," *id.* at 75, and that Sheriff—through actions or inactions of its employees—"refus[ed] or neglect[ed] to provide [Willmon] with reasonably adequate care and attention" after he had developed the wounds, *id.* at 76.

[3] Sheriff sought summary judgment and designated evidence, arguing—among other things—that an independent contractor called Advanced Correctional Healthcare ("ACH") had been in charge of medical care. Sheriff asserted that Willmon's "claims pertain to medical decisions," but the "decisions were made by ACH and its employees," *id.* at 20, and that Sheriff was "immune from liability for the actions of the independent contractors," *id.* at 21. Designated evidence indicated that ACH had provided the PCJ with a registered nurse and a physician. Outside of this ACH-provided staff, Sheriff employed a nurse and a medical assistant who directly reported to the medical personnel from ACH.

[4] In response, Willmon designated evidence that he had been hallucinating on April 9, 2010, when he was placed in a padded cell without a wheelchair "due to possible harm to self." App. Vol. III at 193. There was evidence that Willmon was naked in the cell, and that, on April 11, medical personnel had observed him "scooting [him]self around [the] cell area . . . causing his skin to rub and tear." *Id.* at 194. Willmon was also observed "lying in urine." *Id.*

---

[2] Willmon's wife was a co-plaintiff who claimed loss of consortium. This claim was eventually dismissed.

Willmon was assigned to the padded cell until April 12, at which point he was no longer hallucinating. Medical notes indicate that Willmon had developed pressure wounds on his buttocks, and was treated in April, May, and June. He first saw a specialist in July. Willmon was released from the PCJ in August, and later had surgery to remove "bone in the wound area." App. Vol. IV at 157. Among the designated evidence was an expert opinion that nurses failed to follow the applicable standard of care in preventing the formation of pressure wounds, "an outcome that should never occur as long as standard, evidence-based nursing interventions are present." *Id.* at 162. The expert opined that nurses failed to recognize that Willmon was "at high risk" due to "his physical impairments." *Id.* The expert also opined that nurses failed to follow the applicable standard of care by placing Willmon "in the padded cell without protection for his skin," allowing Willmon "to scoot around on his bare skin," failing to closely monitor him, failing to "intervene when injury and sanitation were documented in the chart," and failing to "offload or turn . . . Willmon when he was physically or mentally unable to do so." *Id.* at 163.

[5] In ruling on the motion, the trial court determined that "ACH provided services to [Sheriff] through a contract," App. Vol. V at 27, and that "[a]ll medical decisions were made by ACH's" staff, *id.* at 28. The court granted summary judgment to Sheriff on Willmon's "nursing malpractice theory," *id.*, identifying "no basis to hold [Sheriff] vicariously liable for the acts and omissions of an independent contractor's employees," *id.* at 27. As to other theories of negligence, the trial court denied the motion because it determined that

"genuine issues of material fact exist concerning whether [Sheriff's] medically trained employees failed to follow the directives of the ACH physician in providing nursing services . . . and whether [Sheriff] may be liable for any breach of duty by [Sheriff's] medically trained employees." *Id.* The court later certified its interlocutory order upon the parties' request. Sheriff filed a Notice of Appeal, and this Court accepted jurisdiction. Willmon cross-appeals.

# Discussion and Decision

## Standard of Review

[6] Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We review *de novo* whether the trial court properly granted summary judgment. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Further, "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the claim." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016). Summary judgment is inappropriate if the movant fails to carry this burden. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). If the movant succeeds, the burden shifts to the non-movant to designate contrary evidence demonstrating the existence of a genuine issue of material fact. *Id.* In reviewing the grant or denial of summary judgment, we look only to the

designated evidence, T.R. 56(H), and construe all factual inferences in favor of the party who did not seek summary judgment, *Manley*, 992 N.E.2d at 673.

# Immunity

Willmon challenges the partial grant of summary judgment, which was predicated upon a determination that ACH was an independent contractor, and there was "no basis to hold [Sheriff] vicariously liable for the acts and omissions of its independent contractor's employees."[3] App. Vol. V at 27. Under the Indiana Tort Claims Act ("ITCA"), "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he act or omission of anyone other than the governmental entity or the governmental entity's employee."[4] Ind. Code § 34-13-3-3. Indiana Code Section 34-6-2-38 sets forth the applicable definition of "employee," expressly excluding an independent contractor or "an agent or employee of an independent contractor." I.C. § 34-6-2-38(b).[5] Further, we note that, under the ITCA, immunity applies even if an independent contractor has performed a

---

[3] Our resolution of Willmon's cross-appeal leads us to conclude that Sheriff was not entitled to summary judgment on any theory of negligence. Thus, we do not address Sheriff's argument that Willmon did not respond to issues Sheriff raised on appeal, and that failing to do so was tantamount to failing to file an Appellee's Brief with respect to those issues.

[4] The parties do not dispute that Sheriff is a governmental entity.

[5] Under Indiana Code Section 34-6-2-38, this exception does not apply to "physicians . . . and optometrists who provide medical or optical care to confined offenders . . . within the course of their employment by or contractual relationship with the department of correction." In arguing against immunity, Willmon directs us to a different statute that nevertheless relates to "the provision of medical or optical care as provided in IC 34-6-2-38." I.C. § 34-13-3-3. To the extent Willmon is relying on these statutes, we note that these statutes do not apply because Willmon was incarcerated in a county jail, not the Indiana Department of Correction.

"non-delegable duty." *Bartholomew Cty. v. Johnson*, 995 N.E.2d 666, 678-79 (Ind. Ct. App. 2013) (interpreting *Hinshaw v. Bd. of Comm'rs v. Jay Cty.*, 611 N.E.2d 637 (Ind. 1993)). "Whether an immunity applies is a matter of law for the courts to decide," and "[t]he party seeking immunity bears the burden of establishing the immunity." *Gary Cmty. Sch. Corp. v. Roach-Walker*, 917 N.E.2d 1224, 1226 (Ind. 2009).

[8]     "Generally, whether one acts as an employee or an independent contractor is a question of fact." *Mortg. Consultants, Inc. v. Mahaney*, 655 N.E.2d 493, 496 (Ind. 1995). Although the pertinent statutes do not define "independent contractor," the common law provides a test for whether one acting for another is an employee (historically referred to as a "servant") or an independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Id.* at 495-96 (applying this common-law test in the absence of a statutory definition) (quoting Restatement (Second) of Agency § 220 (1958)); *Jacks by Jacks v. Tipton Cmty. Sch. Corp.*, 94 N.E.3d 712, 718 (Ind. Ct. App. 2018) (noting this test when evaluating the applicability of immunity), *trans. denied.* "[A]ll factors must be assessed and no factor is dispositive." *Mahaney,* 655 N.E.2d at 496. Furthermore, "this list of factors is non-exhaustive." *Id.* "[G]enerally 'an independent contractor controls the method and details of his task and is answerable to the principal as to results only.'" *Id.* (quoting *Detrick v. Midwest Pipe & Steel, Inc.*, 598 N.E.2d 1074, 1077 (Ind. Ct. App. 1992)).

[9] The designated evidence favorable to Willmon indicates that ACH provided a physician and a registered nurse to render healthcare at the PCJ. The ACH registered nurse began working for ACH in July of 2009, and worked only at the PCJ. She was referred to as the PCJ's director of medical services. App. Vol. II at 213. While ACH provided a physician and a registered nurse, Sheriff

provided a nurse and a medical assistant who directly reported to ACH staff. Although the ACH contract included a clause specifying that it was establishing "an independent contractor relationship," App. Vol. III at 110, the contract required that ACH "operate within the requirements of SHERIFF'S Policies and Procedures which directly relate to the provision of medical services," *id.* at 107, as well as other policies and procedures that "may impact on [*sic*] the provision of medical services" and "may change from time to time," *id.* at 108.[6] The contract provided that "SHERIFF shall have final approval of ACH's employees in regards to security/background clearance." *Id.* Under the contract, "SHERIFF shall provide use of [County]-owned office equipment, supplies, and all necessary utilities in place at the [PCJ's] health facilities." *Id.* ACH was to provide particular medications, but was not responsible for certain expenses, such as "medical equipment, supplies and/or testing materials." *Id.*

[10] Ultimately, the designated evidence favorable to Willmon indicates that the ACH nurse worked only out of the PCJ, and that the contract afforded ACH use of Porter County equipment and supplies. Moreover, the PCJ had its own medical staff who reported directly to ACH staff, while ACH staff remained obligated to follow the PCJ's medical procedures that were subject to change.

---

[6] The defendant in this case is the Porter County Sheriff's Department, which we refer to as Sheriff. Yet, the contract was executed between ACH and Porter County, with the Porter County Sheriff signing in an official capacity. The parties to this litigation do not appear to differentiate between the Porter County Sheriff and the Porter County Sheriff's Department. Indeed, the Porter County Sheriff's Department refers to "the Sheriff's Department's contract with ACH." Reply Br. of Appellant at 14 (emphasis added). As the parties draw no distinction between the sheriff and the department, we also draw no distinction.

In light of this evidence, there remains a genuine issue of material fact as to whether ACH and its staff functioned as independent contractors for the purposes of tort liability. *See Mahaney*, 655 N.E.2d at 495-96. Thus, the trial court erred to the extent it narrowed the scope of claims by concluding that (1) as a matter of law, ACH was an independent contractor, and (2) Sheriff was immune from liability for any negligence attributable to ACH staff.

## Medical Malpractice

[11] Sheriff denies vicarious liability under any theory, but, as an initial matter, argues that Willmon cannot pursue a claim sounding in malpractice because Willmon's complaint "sounded in general negligence and failed to put [Sheriff] on notice that [Willmon] sought relief under a theory of medical malpractice." Reply Br. of Appellant at 9. Sheriff argues that "[t]he word 'malpractice' never appears. The phrases 'nursing malpractice,' or 'medical negligence' do not appear in the complaint." *Id.* at 10. Sheriff asserts that the theory arose only in response to the motion for summary judgment, and that Sheriff should not "suffer the consequences" of the belated pursuit of this theory.[7] *Id.* at 11.

[12] Yet, when moving for summary judgment, Sheriff acknowledged that Willmon "alleg[ed] acts and omissions related to health care services" in the PCJ. App. Vol. II at 19. Sheriff characterized the complaint as "claiming that the licensed

---

[7] Sheriff is not arguing that the Medical Malpractice Act governs this action. *See* I.C. § 34-18-3-4 ("A claim against a governmental entity or an employee of a governmental entity based on an occurrence of malpractice is governed exclusively by this article if the governmental entity or employee is qualified under this article.").

physician and/or registered nurse acted unreasonably in their decisions or implementation of [Willmon's] medical care, prescription of medication, and provision of medical equipment"—actions Sheriff sought immunity from by arguing they were decisions "made by ACH and its employees." *Id.* at 20. Thus, we are not persuaded that Sheriff lacked adequate notice of the nature of Willmon's claims. *See* T.R. 8(F) ("All pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points."); *Shields v. Taylor*, 976 N.E.2d 1237, 1245 (Ind. Ct. App. 2012) ("[U]nder notice pleading the issue of whether a complaint sufficiently pleads a certain claim turns on whether the opposing party has been sufficiently notified concerning the claim so as to be able to prepare to meet it.").

[13] Moving to the merits, to prevail on a claim of medical malpractice, the plaintiff must prove that a health care provider breached a duty of care, proximately causing the plaintiff damages. *Harris v. Raymond*, 715 N.E.2d 388, 393 (Ind. 1999). Under a theory of vicarious liability, "an employer, who is not liable because of his own acts, can be held liable 'for the wrongful acts of his employee which are committed within the scope of employment.'" *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 148 (Ind. 1999) (quoting *Stropes v. Heritage House Children's Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989)).

[14] In granting partial summary judgment to Sheriff, the trial court foreclosed a theory of negligence based upon a claim of medical malpractice because it had concluded that (1) ACH was an independent contractor and (2) ACH staff had made all medical decisions. Yet, we have identified a genuine issue of material

fact concerning the relationship between Sheriff and ACH-provided staff. Thus, Sheriff could be vicariously liable for medical malpractice committed by *any* medical personnel at the PCJ—whether or not provided by ACH. The burden, then, was upon Sheriff to negate an element of Willmon's claim of malpractice. *See generally Manley*, 992 N.E.2d at 673.

[15] The designated evidence indicates that Willmon developed a pressure wound in the PCJ—while under the supervision of medical personnel—and that medical personnel treated the wound over the course of several months. Eventually, Willmon was referred to an outside specialist. However, the wound progressed to the point that it required surgery after Willmon was released from the PCJ.

[16] "Generally, in order for the finder of fact to know if a professional has complied with the applicable standard of care, a party must present expert testimony establishing that standard of care." *Troutwine Estates Dev. Co., LLC v. Comsub Design & Eng'g, Inc.*, 854 N.E.2d 890, 902 (Ind. Ct. App. 2006), *trans. denied*; *see also Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1201 (Ind. 2008). Indeed, "substantive law requires expert opinion as to the existence and scope of the standard of care . . . imposed upon medical specialists and as to whether particular acts or omissions measure up" to that standard of care. *McGee v. Bonaventura*, 605 N.E.2d 792, 794 (Ind. Ct. App. 1993) (quoting *Bassett v. Glock*, 368 N.E.2d 18, 23 (Ind. Ct. App. 1977)). Here, Willmon designated an expert opinion that *nurses* breached the applicable standard of care. However, Sheriff asserts that the ACH physician gave all orders, and that there is "no expert testimony contending that [the physician] breached any professional standard of

care." Reply Br. of Appellant at 17. Sheriff also points out that "there is no evidence designated in the record to establish the standard of care for a medical assistant." *Id.* at 18. Yet, because Sheriff was the movant for summary judgment, it was Sheriff's burden—not Willmon's—to designate an expert opinion concerning compliance with the standard of care.[8] Sheriff designated one expert opinion—that of a urologist concerning urinary tract infections and catheters. In this opinion, the expert stated that he was "not an expert in wound care." App. Vol. III at 232. Plainly, then, this opinion did not supply a standard of care concerning the prevention and treatment of wounds—nor did it establish that any medical personnel complied with the applicable standard. Thus, Sheriff failed to negate an element of the claim of medical malpractice.

[17] Ultimately, in light of our resolution of issues pertaining to immunity and the adequacy of the pleading, we conclude that Sheriff was not entitled to summary judgment on a malpractice-based theory of negligence, or otherwise. Thus, we conclude that the trial court improperly granted partial summary judgment.

---

[8] In seeking summary judgment, Sheriff argued that "the burden of establishing the appropriate standard of care rests with the plaintiff." App. Vol. II at 55. This is so when the case proceeds to trial. *See generally Chi Yun Ho*, 880 N.E.2d at 1201 ("Medical negligence is . . . not generally a conclusion that may be reached by a jury without . . . an expert opinion among the evidence presented."). Yet, at this stage, the movant for summary judgment bears the burden on the motion. *See, e.g.*, *Blaker v. Young*, 911 N.E.2d 648, 651 (Ind. Ct. App. 2009), *trans. denied*. Indeed, the burden shifts only after the defendant-movant demonstrates, through the opinion of an expert, that there was no breach of the applicable standard of care. *See, e.g.*, *id.* (analyzing the adequacy of the plaintiff's designated expert opinion where the defendant-movant had first designated an expert opinion "that there was no evidence [the defendant] did not meet the appropriate standard of care").

[18]    Affirmed in part, reversed in part, and remanded for further proceedings.

Bradford, J., and Brown, J., concur.