

**FILED**

Sep 17 2013, 5:39 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**DOUGLAS A. HOFFMAN**
**JEREMY M. DILTS**
Carson Boxberger LLP
Bloomington, Indiana

ATTORNEYS FOR APPELLEES:

**RICHARD S. EYNON**
**DAVID M. BRINLEY**
Eynon Law Group, P.C.
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BARTHOLOMEW COUNTY and )
BARTHOLOMEW COUNTY COMMISSIONERS, )
)
    Appellants-Defendants/ )
    Third-Party Plaintiffs, )
)
    vs. ) No. 03A01-1212-CT-578
)
DOUG JOHNSON and LUCRETIA JOHNSON, )
)
    Appellees-Plaintiffs, )
)
    vs. )
)
C & H/M EXCAVATING AND )
CONSTRUCTION, INC., and CHRISTOPHER B. )
BURKE ENGINEERING, LTD., )
)
    Third-Party Defendants. )

APPEAL FROM THE BARTHOLOMEW CIRCUIT COURT
The Honorable Stephen R. Heimann, Judge
Cause No. 03C01-1005-CT-1024

**September 17, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Bartholomew County and the Bartholomew County Commissioners (collectively, "the County") contracted with two companies to design and construct a replacement bridge on a county road. After the bridge was constructed, Doug and Lucretia Johnson's nearby property was damaged by flooding. The Johnsons filed a complaint against the County, alleging that it had negligently designed, constructed, maintained, and operated the bridge, which contributed to the flooding. The County filed a third-party complaint against the bridge's designer and builder, alleging that they were the real parties in interest.

The County also filed a motion for summary judgment, alleging that it was entitled to immunity from liability for the acts or omissions of the designer and builder pursuant to Indiana Code Section 34-13-3-3(10), which provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from … [t]he act or omission of anyone other than the governmental entity or the governmental entity's employee." In support of its immunity argument, the County relied on *Hinshaw v. Board of Commissioners of Jay County*, 611 N.E.2d 637 (Ind. 1993). The Johnsons argued that the County had a non-delegable duty to design and construct the bridge and therefore could not avoid liability by blaming the designer and builder. In support of their argument, the Johnsons relied on *Shand Mining, Inc. v. Clay County Board of Commissioners*, 671 N.E.2d 477 (Ind. Ct. App. 1996), *trans. denied* (1997), and *City of Vincennes v. Reuhl*, 672 N.E.2d 495 (Ind. Ct. App. 1996), *trans. denied* (1997), neither of which mentions *Hinshaw*.

2

The bridge designer filed a summary judgment motion asserting that the bridge was not negligently designed, which the trial court denied. The bridge builder filed a summary judgment motion asserting that the bridge was not negligently constructed, which the trial court granted. The trial court entered summary judgment for the County as to the Johnsons' negligent construction claims but denied the County's summary judgment motion on the issue of immunity, finding that the County had a non-delegable duty to "provide appropriate bridges" and therefore was not immune from liability for the acts or omissions of the bridge designer. Appellants' App. at 116.

The County now appeals, arguing that *Hinshaw* requires reversal of the trial court's ruling and that *Shand Mining* and *Reuhl* were wrongly decided. The Johnsons contend that the County's appeal is frivolous and in bad faith and request an award of attorneys' fees pursuant to Indiana Appellate Rule 66(E). We agree with the County that, pursuant to *Hinshaw*, it is entitled to immunity from liability from any loss resulting from the acts or omissions of the bridge designer. Under Indiana law, a principal may be liable for the negligence of its independent contractor only if the contractor was performing a non-delegable duty; Indiana Code Section 34-13-3-3(10) would be useless if it did not provide immunity to a governmental entity for a loss resulting from an independent contractor's performance of a non-delegable duty, and we presume that the legislature did not enact a useless provision. Therefore, we reverse the trial court's ruling on the immunity issue and respectfully disagree with *Shand Mining* and *Reuhl* to the extent that they conflict with our supreme court's opinion in *Hinshaw*. Because the County's summary judgment motion was

3

directed only toward the negligence of third parties and the Johnsons' negligent design and construction claims, we remand for further proceedings as to the negligent maintenance and operation claims. Because we have determined that the County's immunity argument prevails, we deny the Johnsons' request for attorneys' fees.

## Facts and Procedural History

The relevant facts are undisputed. In 2007, a replacement bridge was constructed on County Road 775 East in Bartholomew County. The County contracted with Christopher B. Burke Engineering, Ltd. ("CBE"), to design the bridge and with C & H/M Excavating, Inc. ("C & H/M"), to construct the bridge. In June 2008, the Johnsons' nearby home and outbuildings were damaged by flood water. In May 2010, the Johnsons filed a complaint against the County that reads in pertinent part as follows:

> 2.  At all times relevant herein, the Defendants designed, owned, constructed, operated, and maintained a bridge (hereinafter "replacement bridge") on County Road 775 East near Plaintiffs' home.
>
> 3.  Said replacement bridge was constructed in 2007 to replace its predecessor, which had a dual-flow design, and said replacement bridge required the diverting of Little Haw Creek to accommodate its construction.
>
> 4.  On or about June 7, 2008, the replacement bridge maintained, operated, constructed, and owned by Defendants failed, thereby diverting waters directly into the path of Plaintiff's [sic] home and appurtenances, including outbuildings and pool, thereby flooding same, which caused Plaintiff [sic] specific and distinct harm, including the destruction of personal property contents.
>
> 5.  Prior to June 7, 2008, during the construction of said replacement bridge, the Defendants had notice and knowledge of the inadequate design and construction of said replacement bridge, and said replacement bridge's failure to meet Federal Emergency Management Agency (FEMA), Indiana Department of Transportation (INDOT), and/or Indiana

4

Department of Natural Resources (DNR) requirements for replacement bridges, in that said replacement bridge was smaller and performed worse and/or less efficient [sic] than its dual-flow predecessor.

6. Further, upon information and belief, Defendants failed to: a) conduct an appropriate hydraulics analysis with calculations; b) conduct an appropriate survey; and/or c) obtain an appropriate DNR permit prior to the construction of the replacement bridge.

7. Defendants were negligent in the construction, operation, and/or maintenance of said replacement bridge, including the diverting of Little Haw Creek to accommodate said bridge, for failing to follow the minimum requirements for replacement bridges set forth by FEMA, INDOT, and/or DNR regulations, and for the reasons set forth herein.

8. Plaintiffs were uniquely and particularly damaged as a result of the Defendants' inadequate replacement bridge and their refusal to properly design, construct, and/or replace same, and were made victims again in August 2009, when the replacement bridge or its successor once again diverted flood waters near Plaintiff's [sic] house, flooded the pole barn/storage building again causing loss of additional personal property, and rendered this building useless as an asset of the property for storage.

9. Said replacement bridge constituted a nuisance.

10. The Defendants' negligence in constructing, operating, and/or maintaining said replacement bridge, i.e. nuisance, proximately caused the following damages to Plaintiffs:

    (a) Emotional distress, inconvenience, and frustration;

    (b) Loss and destruction of personal property;

    (c) Out-of-pocket expenses related to the clean-up and repair of Plaintiffs' residence in excess of $98,000.00.

    (d) Diminution, depreciation, or decrease in the value of Plaintiffs' residence.

Appellees' App. at 1-3.

In October 2011, the County filed a third-party complaint against CBE and C & H/M, seeking indemnification from those entities pursuant to their respective contracts and alleging that they were the real parties in interest. In July 2012, the County filed a motion for summary judgment. In support of this motion, the County designated the affidavit of County Engineer Danny Hollander, who averred that the County "did not participate in the engineering, design, or construction of the bridge" at issue and that "[a]ll such activities were performed by contractors or entities hired to perform each task (engineering/design and/or construction)." Appellants' App. at 33. In its accompanying memorandum, the County argued that it was entitled to immunity from liability for the acts or omissions of C & H/M and CBE pursuant to Indiana Code Section 34-13-3-3(10), which provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from … [t]he act or omission of anyone other than the governmental entity or the governmental entity's employee."[1] In their response, the Johnsons argued that the County "had a non-delegable common law and statutory duty to design, construct, and maintain the subject bridge" and therefore "cannot avoid liability by blaming Third-Party Defendants [C & H/M and CBE]." Appellees' App. at 16.

CBE filed a summary judgment motion asserting that the bridge was not negligently designed. The County joined in CBE's motion. C & H/M filed a summary judgment motion

---

[1] For reasons unknown, the County has repeatedly referred to this provision as Indiana Code Section 34-13-3-3(12).

asserting that the bridge was not negligently constructed. The County joined in that motion as well. The Johnsons opposed both summary judgment motions.

On November 7, 2012, the trial court issued an order denying the County's and CBE's summary judgment motions and granting C & H/M's summary judgment motion. With respect to the County, the trial court framed the issue as

> whether the County can escape liability by delegating its duty to provide appropriate bridges. The case law is clear that this duty is non-delegable. Even if the County contracts with a third party, i.e., [CBE], the County is not immune from liability if the work done by [CBE] negligently caused damages to another.

> ….

> Because the County, as principal, has a non-delegable duty to maintain its bridges, it is not immune from liability for acts or omissions of its independent contractor (agent). Therefore, if [CBE] was negligent in the design of [the bridge] and if that negligence caused damages to the Johnsons, then the County can be held liable. Therefore, the County's Motion for Summary Judgment should be denied.

Appellants' App. at 116, 118. On November 29, 2012, the trial court issued an order clarifying its previous order and granting final partial summary judgment to the County as to all claims of negligent construction. The County filed a motion to certify the November 7 order for interlocutory appeal, which the trial court granted, and we accepted jurisdiction.

**Discussion and Decision**

*I. Immunity*

"The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Wade v. Norfolk & W. Ry. Co.*, 694 N.E.2d 298, 301 (Ind. Ct. App. 1998), *trans. denied* (2000).

7

The burden is on the moving party to show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The reviewing court faces the same issues that were before the trial court and must carefully scrutinize the trial court's determination to assure that the non-prevailing party was not improperly prevented from having his day in court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. We review the designated materials in the light most favorable to the non-movant without determining weight or credibility. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by [Trial Rule] 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. The appellate court is not limited to reviewing the trial court's reasons for granting summary judgment, but will affirm a grant of summary judgment if it is sustainable on any theory or basis found in the record.

*Id.* (some citations omitted).

The County contends that the trial court erred in denying its summary judgment motion on the basis that it is not entitled to immunity pursuant to Indiana Code Section 34-13-3-3(10). Governmental immunity from suit is governed by the Indiana Tort Claims Act ("ITCA"). *E. Chicago Police Dep't v. Bynum*, 826 N.E.2d 22, 26 (Ind. Ct. App. 2005), *trans. denied* (2006).

Governmental entities and their employees are subject to liability for torts committed by them unless they can prove that one of the immunity provisions of the ITCA applies. Because the ITCA is in derogation of the common law,[2] we construe it narrowly against the grant of immunity. The party seeking immunity bears the burden of establishing its conduct comes within the Act.

---

2 *See Gary Cmty. Sch. Corp. v. Roach-Walker*, 917 N.E.2d 1224, 1226-27 (Ind. 2009) ("Like many other jurisdictions, Indiana abolished common law sovereign immunity for all government activities in a series of judicial decisions in the 1960s and early 1970s. As a result of these decisions, most activities of government entities were exposed to liability under traditional tort theories. In response, the Indiana General Assembly passed the ITCA. This statute granted absolute immunity to governmental entities in a number of specific circumstances, and codified rules of liability for other areas of governmental activity.") (citations omitted).

8

While the issue of a governmental entity's immunity from liability under the ITCA may require extended factual development, the issue remains a question of law for the courts. Therefore, we review claims of governmental immunity de novo. We owe the trial court no deference, and we will substitute our judgment for that of the trial court if necessary.

*Id.* (citations and quotation marks omitted).

Our supreme court has said, "The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003) (citation and quotation marks omitted).

Immunity assumes negligence but denies liability. Thus, the issues of duty, breach and causation are not before the court in deciding whether the government entity is immune. If the court finds the government is not immune, the case may yet be decided on the basis of failure of any element of negligence. This should not be confused with the threshold determination of immunity.

*Peavler v. Bd. of Comm'rs of Monroe Cnty.*, 528 N.E.2d 40, 46-47 (Ind. 1988).

In asserting that it is entitled to immunity, the County has relied on our supreme court's opinion in *Hinshaw*. In that case, the Hinshaws were involved in a collision at an intersection of county roads and filed a complaint against Jay County alleging negligence in signing and maintaining the intersection. Jay County argued that it was entitled to immunity pursuant to Indiana Code Section 34-13-3-3(10).[3] The trial court entered summary judgment

---

[3] Indiana Code Section 34-13-3-3(10) was codified as Indiana Code Section 34-4-16.5-3(9) when *Hinshaw* was decided, and it was later recodified as Indiana Code Section 34-13-3-3(9). For simplicity's sake, we use the current citation where applicable.

9

in favor of Jay County. The Court of Appeals reversed, and our supreme court granted transfer.

The Hinshaws argued that Indiana Code Section 34-13-3-3(10) "applies only when the conduct of a non-government employee is the sole proximate cause of the plaintiffs' injuries," whereas Jay County argued that "the provision grants immunity to a governmental entity whenever its negligence combines with the negligence of a third party." *Id*. at 638. Our supreme court stated,

> Viewing the immunity statute as a whole, we note a significant general pattern. Its various subsections each identify an aspect or characteristic of governmental activity which gives rise to an immunity for the acts and omissions comprising that activity. The subsections are *not* referring to activities apart from the governmental activity upon which a claim of governmental liability is based. The introductory phrase "if a loss results from" does *not* mean "if a loss also results from."
>
> Thus, for example, governmental immunity is not clearly conferred to shield a government-employed lifeguard, otherwise liable for a swimmer's injuries by reason of the lifeguard's intoxication and inattention, upon the lifeguard's claim that the loss also resulted in part from "the natural condition of unimproved property." Ind. Code § [34-13-3-3(1)]. Nor does a government employee who falls asleep while driving a maintenance truck and collides with a parked car appear to be immunized from liability for such negligence merely because he alleges that an additional factor in the loss was "the temporary condition of a public thoroughfare which results from weather." Ind. Code § [34-13-3-3(3)]. Likewise, when a governmental entity is otherwise liable as a joint tortfeasor, no governmental immunity is clearly extended on grounds that the *other* joint tortfeasor engaged in "the performance of a discretionary function," Ind. Code § [34-13-3-3(7)], failed to make a safety inspection, Ind. Code § [34-13-3-3(12)], or made an unintentional misrepresentation, Ind. Code § [34-13-3-3(14)]. In view of the absence of express declaration or unmistakable implication in the statute, we find that immunity is not conferred when the circumstances designated in the subsections do not encompass or directly relate to the specific government conduct for which liability is sought to be imposed.

However, applying both the rule presuming that legislative enactments are purposeful and the rule requiring narrow construction for statutory provisions in derogation of common law, we conclude that Subsection [10] does provide immunity in certain cases wherein governmental liability could otherwise occur, but that this immunity exists only when the alleged governmental liability is grounded upon the acts or omissions of persons other than the government employee acting within the scope of the employee's employment.

The law has long recognized a number of circumstances in which tort liability may be vicariously imposed upon persons for the conduct of agents who are not employees or subject to any right of control by the employer. *See e.g.*, *City of Logansport v. Dick* (1880), 70 Ind. 65 (intrinsically dangerous activity); *Rediehs Express, Inc. v. Maple* (1986), Ind. App., 491 N.E.2d 1006, *cert. denied* (1987), 480 U.S. 932, 107 S. Ct. 1571, 94 L. Ed. 2d 762 (liability under ICC regulations); *Ackman v. Bullard* (1974), 161 Ind. App. 437, 316 N.E.2d 444 (joint enterprise); *Soft Water Util., Inc. v. LeFevre* (1974), 159 Ind. App. 529, 308 N.E.2d 395 (apparent authority); *Polk Sanitary Milk Co. v. Berry* (1938), 106 Ind. App. 29, 17 N.E.2d 860 (ratification); *see generally* William Prosser, *The Law of Torts* § 69, at 467 (4th ed. 1971); *Restatement (Second) of Agency* §§ 141, 159, 251-67 (1958). It is in such actions seeking to impose vicarious liability by reason of conduct of third parties that governmental entities and employees may seek to claim immunity under Subsection [10]. Under such circumstances, the alleged basis of governmental

entity liability is the act or omission of a third person not within the scope of employment as a government employee.[4]

In the present case, the County claims Subsection [10] immunity on grounds that the conduct of persons other than a government employee contributed to the plaintiffs' injuries. It alleges that the proximate causes of the accident included the negligence of the driver of the automobile that collided with the plaintiffs' vehicle and that of the owners of vehicles parked

---

[4] In *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142 (Ind. 1999), our supreme court explained,

Vicarious liability is "indirect legal responsibility." It is a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer. Courts employ various legal doctrines to hold people vicariously liable, including respondeat superior, apparent or ostensible agency, agency by estoppel, and the non-delegable duty doctrine.[4] Some doctrines are based in tort law, some are based in agency law. Courts often discuss the various doctrines as if they are interchangeable; they are not....

[4] While a master is generally not liable for the negligence of an independent contractor, the master may be liable if the independent contractor was performing a non-delegable duty. A non-delegable duty is one that public policy holds to be so important that one party should not be permitted to transfer the duty (and its resultant liability) to another party.

Respondeat superior is the applicable tort theory of vicarious liability. Under respondeat superior, an employer, who is not liable because of his own acts, can be held liable for the wrongful acts of his employee which are committed within the scope of employment. In this context, "employer" and "employee" are often stated in broader terms as "master" and "servant."

One important aspect in applying respondeat superior is differentiating between those who are servants and those who are independent contractors. A servant is defined in the following general manner: one who is employed by a master to perform personal services and whose physical conduct is subject to the right to control by the master. It is the employer's right to control that generally separates a servant from an independent contractor. An independent contractor can, therefore, be defined as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

It is important to distinguish between servants and independent contractors in the tort context because, while a master can be held liable for a servant's negligent conduct under respondeat superior, a master generally cannot be held liable for the negligence of an independent contractor. The theory behind non-liability for independent contractors is that it would be unfair to hold a master liable for the conduct of another when the master has no control over that conduct.

*Id*. at 147-48 (some footnotes omitted) (citations omitted) (some quotation marks omitted).

12

at the intersection.  The plaintiffs' claim against the County is grounded on allegations of negligent signing and maintenance of the intersection. Therefore, because the Subsection [10] circumstances (conduct of "someone other than the governmental entity employee") do not encompass or directly relate to the acts or omissions upon which the plaintiffs are basing the claim of governmental entity negligence, such conduct of third persons does not give rise to the immunity provided by Subsection [10].

611 N.E.2d at 640-41.

In this case, the County argues that

there could be no clearer application of the "acts of others" immunity.  No one affiliated with Bartholomew County had any role in the design of the bridge at issue.  All design and engineering services related to the bridge at issue were performed by [CBE].…  The Johnsons are attempting to hold Bartholomew County vicariously liable for the alleged negligence of [CBE].  Such a scenario is precisely the circumstance identified by [the *Hinshaw* court] regarding the appropriate application of [Indiana Code Section 34-13-3-3(10)].

Appellants' Br. at 5-6 (citations to appendix omitted).

In arguing that the County is not entitled to immunity, the Johnsons have relied on two opinions from this Court, *Shand Mining* and *Reuhl*, neither of which mentions *Hinshaw*.  In *Shand Mining*, Teea and Maria Lunsford

were injured when their car left Harmony Road in Clay County, Indiana, dropped approximately two feet, collided with a phone junction box and utility pole, and overturned on an earthen embankment.…  [T]he Lunsfords filed a complaint against Clay County and Shand Mining, alleging that they breached their duty to maintain Harmony Road.  In response, Clay County filed a cross-claim against Shand Mining which alleged that Shand Mining was contractually obligated to maintain the road ….

671 N.E.2d at 478.  Clay County filed a summary judgment motion contending that it was entitled to immunity on several grounds, including that "it made a discretionary decision to delegate its responsibility for maintaining Harmony Road to Shand Mining" and that "the

13

accident was caused by the act or omission of another." *Id.* at 479. The trial court granted the motion, and Shand Mining appealed.

In addressing those theories of immunity, another panel of this Court stated,

[Indiana Code Section 34-13-3-3] provides:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:
> …
>
> [(7)] the performance of a discretionary function; …
>
> [(10)] the act or omission of anyone other than the governmental entity or the governmental entity's employee; …

Although Shand Mining raises several arguments in opposition to the trial court's grant of summary judgment, one issue is dispositive: whether Clay County's duty to maintain Harmony Road is a non-delegable duty.

Generally, a principal who delegates a duty to an independent contractor is not liable for the negligence of that independent contractor in performing the duty. *Bagley v. Insight Communications Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995). However, an exception to this general rule exists "where the principal is by law or contract charged with performing the specific duty." *Id.* Duties that are imposed by law or contract are considered non-delegable because they are deemed so important to the community that the principal should not be permitted to transfer these duties to another. *Id.* at 587. As a result, although a principal may transfer the responsibility for performing a duty to an independent contractor, the principal remains liable if the duty is negligently performed.

In Indiana, the legislature has specifically charged the county supervisor with the supervision of the maintenance and repair of all highways within the county. IND. CODE § 8-17-3-2. Further, Indiana judicial decisions have recognized that governmental entities have a specific obligation with respect to public travel. *See City of Indianapolis v. Cauley*, 164 Ind. 304, 309-10, 73 N.E. 691, 693-94 (1905) (it is legal duty of municipality to exercise supervision over bridges under its control and to make inspection as ordinary care and diligence require). In *Board of Comm'rs of Wabash County v. Pearson*, 120 Ind. 426, 22 N.E. 134 (1889), for example, our supreme court

14

held a county liable for its negligent supervision of persons employed to repair a bridge when the bridge was left in an unsafe condition. In holding the county liable, the court relied on a non-delegable duty imposed by law. *See* Burns Rev. State. § 2892 (1881) (required county's Board of Commissioners to maintain public bridges). Thus, while we agree that Clay County may exercise its discretion to delegate its responsibility for maintaining a road to a private entity such as Shand Mining, we cannot say that it is relieved of liability on the basis of its delegation. The trial court, therefore, erred in granting summary judgment in favor of Clay County on the basis that it was immune from liability.

Nevertheless, this court can affirm the trial court's judgment on appellate review if it is sustainable on any theory or basis found in the record. Thus, although we reject Clay County's argument that it is entitled to summary judgment due to its governmental immunity, we may still affirm the trial court if we determine that there are no genuine issues of material fact and that Clay County is entitled to judgment as a matter of law.

In the instant case, the complaint alleges Clay County was negligent in its maintenance and repair of Harmony Road. Specifically, the complaint provides:

> (4) That the drop of approximately two (2) feet, and the absence of a shoulder off the traveled portion of Harmony Road in the vicinity of the accident made it impossible for the Plaintiff to keep her vehicle on the roadway….

> (7) That Defendants failed to protect travelers on Harmony Road including but not limited to Plaintiffs, Teea S. Lunsford and Maria L. Lunsford, by their negligence in failing to properly maintain and repair the road in a reasonable fashion and/or to meet ASSHTO standards, and by their failure to warn drivers including, but not limited to Teea S. Lunsford of the treacherous condition of the roadway.

Since Clay County properly delegated the duty to maintain Harmony Road to Shand Mining, Clay County can only be liable if the Lunsfords demonstrate that Shand Mining was negligent in its maintenance or repair of the road and that Clay County negligently failed to supervise such repair or maintenance by Shand Mining. The record, however, sets forth no testimony, affidavits, depositions or other proof establishing that Shand Mining negligently repaired or maintained the highway or that Clay County negligently supervised such

15

maintenance. Shand Mining contends solely that [the] Lunsfords' complaint presents an issue of fact regarding the cause of the accident. However, the parties may not rest on the pleadings to establish a genuine issue of material fact to withstand summary judgment. T.R. 56. As a result, Clay County is entitled to judgment on the Lunsfords' complaint as a matter of law.

*Id*. at 481-82 (footnote and some citations omitted).

In *Reuhl*, the City of Vincennes contracted with Environmental Management Corporation ("EMC") to operate and maintain its wastewater treatment facility. Pursuant to the agreement, EMC was responsible for the city's sewer collection lines and the related collection system. Vincennes also "contracted with Rogers Construction Group, Inc., to resurface various streets within the city. When Rogers resurfaced a street near a storm sewer, it left space around the sewer so EMC could cement around its sewer grate." 672 N.E.2d at 497. Virginia Reuhl was injured when she stepped into a hole next to a sewer grate.

As a result, Reuhl filed a complaint against Vincennes, EMC and Rogers, claiming that the defendants negligently created the hole, failed to repair the hole and failed to warn her of the hole. EMC filed a cross-claim against Vincennes alleging that EMC was entitled to indemnity, pursuant to their agreement, for damages resulting from Vincennes' negligence.

*Id*. Vincennes filed a motion for summary judgment as to Reuhl's complaint, asserting that it was entitled to immunity pursuant to Indiana Code Section 34-13-3-3(10). The trial court denied the motion, and Vincennes appealed.

Another panel of this Court addressed the immunity issue as follows:

Vincennes contends the trial court erred in denying its motion for summary judgment on Reuhl's claim. Specifically, Vincennes argues that because it contracted with EMC and Rogers to maintain the sewer system and the streets, any damage to Reuhl was caused by the acts or omissions of others. As a result, Vincennes claims it was entitled to governmental immunity.

16

[Indiana Code Section 34-13-3-3(10)] provides that a governmental entity is immune from liability for damages which result from the acts or omissions of anyone other than the governmental entity. We recently addressed whether a governmental entity who contracts with another to perform a traditional government function could avoid liability under this statute for damage based on the contract. In *Shand Mining, Inc. v. Clay County Bd. of Commissioners*, 671 N.E.2d 477, 481 (1996), we held that while a governmental entity could delegate its responsibility for maintaining streets to a private party, it could not avoid liability for negligent maintenance of the streets on the basis of its delegation. This holding was based on the well-settled law in Indiana that a principal cannot avoid liability for the negligence of its agent if the principal is by law or contract charged with performing the specific duty. *Bagley v. Insight Communications Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995). In Indiana, governmental entities are charged with specific obligations with respect to public travel. *See City of Indianapolis v. Cauley*, 164 Ind. 304, 309-10, 73 N.E. 691, 693, 694 (1905); IND. CODE § 8-17-3-2 (county supervisor has responsibility for supervision of maintenance and repair of all highways within county). Thus, we held that the governmental entity was not immune from liability.

In the instant case, the same analysis applies. Vincennes properly exercised its discretion to delegate its duty to maintain its sewer system and streets to EMC and Rogers. Nevertheless, Vincennes is not entitled to immunity on the basis of its delegation because Vincennes is charged by law with maintaining public travel. The trial court, therefore, properly denied Vincennes' motion for summary judgment on Reuhl's claim for damages.

*Id*. at 497-98. The *Reuhl* court then dropped the following footnote:

Throughout their briefs, the parties argue about whether Reuhl's complaint alleges direct or vicarious liability against Vincennes. To the extent that Reuhl's complaint alleges Vincennes was negligent for acts delegated to another party, its liability is vicarious. As a result, Vincennes['] liability is limited to its negligent failure to supervise the other party in its performance of the delegated acts. *See Shand*, 671 N.E.2d at 481-82 (because county delegated duty to maintain road, county could only be liable if plaintiff demonstrated that county negligently failed to supervise such repair or maintenance). However, to the extent that Reuhl's complaint alleges negligence for separate, non-delegated acts or omissions, Vincennes can be held directly liable.

*Id*. at 498 n.1.

17

In this case, the trial court relied on both *Shand Mining* and *Reuhl* in denying the

County's summary judgment motion, concluding as follows:

> Because the County, as principal, has a non-delegable duty to maintain its bridges, it is not immune from liability for acts or omissions of its independent contractor (agent). Therefore, if [CBE] was negligent in the design of [the bridge] and if that negligence caused damages to the Johnsons, then the County can be held liable. Therefore, the County's <u>Motion for Summary Judgment</u> should be denied.

Appellant's App. at 118. The County takes issue with the trial court's (and the Johnsons')

reliance on those cases, claiming that

> *Shand Mining* and *Reuhl* engrafted an exception to the immunity [for the act or omission of anyone other than the governmental entity or its employee] directly from the common law – liability predicated on a non-delegable duty. That engrafted exception has swallowed the immunity, effectively eliminating "acts of others" immunity by replacing the statutory immunity with the pre-existing common law. Under the common law, Bartholomew County would not have been liable for any alleged negligence of its independent contractor in the absence of a non-delegable duty. Statutory immunity for "acts of others" would be unnecessary **unless** that immunity was intended to eliminate the liability that would have existed under the common law. Because the Legislature enacted "acts of others" immunity, it must have intended to eliminate the only liability a governmental entity could have for the acts of its independent contractors – liability predicated on the existence of a non-delegable duty.

Appellants' Reply Br. at 2.

We agree with the County. Indeed, we find it telling that neither *Shand Mining* nor

*Reuhl* mentions *Hinshaw* and that Indiana Code Section 34-13-3-3(10) contains no

exceptions to its straightforward grant of immunity. Although the *Hinshaw* court was not

faced with a situation involving an independent contractor and did not use the phrase "non-

delegable duty," that concept was at the heart of its discussion of vicarious liability. *See*

18

*Hinshaw*, 611 N.E.2d at 640 (referring to imposition of vicarious liability for, among other things, "intrinsically dangerous activity" conducted by "agents who are not employees or subject to any right of control by the employer," i.e., independent contractors); *see also Bagley*, 658 N.E.2d at 586, 588 ("In Indiana, the long-standing general rule has been that a principal is not liable for the negligence of an independent contractor. However, five exceptions have been recognized for more than half a century. The exceptions are: (1) where the contract requires the performance of *intrinsically dangerous work*; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal.… [T]he five exceptions represent specific, limited situations in which the associated duties are considered non-delegable because public policy concerns militate against permitting an employer to absolve itself of all further responsibility by transferring its duties to an independent contractor.") (emphasis added) (citations omitted).

The clear import of *Hinshaw*'s vicarious liability analysis is that Indiana Code Section 34-13-3-3(10) entitles a governmental entity to immunity from liability for a loss resulting from the acts or omissions of an independent contractor; that liability would arise only if the independent contractor had performed a non-delegable duty. *See Becker v. Kreilein*, 770 N.E.2d 315, 318 (Ind. 2002) (stating that aforementioned five exceptions "are the only bases for establishing a duty of care by a principal who acts through an independent contractor"). Indiana Code Section 34-13-3-3(10) would be useless in situations involving an independent

19

contractor if it did not apply to non-delegable duties, and we "presume that the legislature did not enact a useless provision." *Hinshaw*, 611 N.E.2d at 638.[5] To the extent that *Shand Mining* and *Reuhl* conflict with *Hinshaw* on this point, we respectfully disagree with those cases.[6] If *Hinshaw* is to be abrogated, it should be done by our supreme court. Consequently, even assuming that a non-delegable duty exists in this case, we conclude that the trial court erred in denying the County's summary judgment motion as to its immunity from liability for any of CBE's acts or omissions and therefore reverse as to that issue.

That being said, we agree with *Shand Mining* and *Reuhl* to the extent they hold that a governmental entity is not entitled to immunity pursuant to Indiana Code Section 34-13-3-3(10) if a loss results from its own negligence, that is, if a loss results from an act for which it "can be held directly liable." *Reuhl*, 672 N.E.2d at 498 n.1. The Johnsons' complaint alleges that the County was negligent in the design, construction, maintenance, and operation of the bridge. Appellees' Br. at 1-3. Pursuant to its contract with the County, CBE was responsible for designing the bridge, and we have held that the County is entitled to immunity from any liability for CBE's acts or omissions. In its reply to the Johnsons' response to its summary judgment motion, the County pointed out that the Johnsons had not alleged that it "negligently supervised the design" of the bridge. Appellants' App. at 109. The trial court

---

[5] We also "presume that the legislature is aware of the common law and intends to make no change therein beyond its declaration either by express terms or unmistakable implication." *Hinshaw*, 611 N.E.2d at 639.

[6] We also respectfully disagree with *Indiana Department of Transportation v. Howard*, 879 N.E.2d 1119 (Ind. Ct. App. 2008), which contains an extensive discussion of *Shand Mining* and *Reuhl*, to the extent that it conflicts with *Hinshaw*.

has already entered summary judgment for the County as to any negligent construction claims. That still leaves us with the Johnsons' negligent maintenance and operation claims. Because the County's summary judgment motion was directed only toward the negligence of third parties and the negligent design and construction claims, we remand for further proceedings as to the County's allegedly negligent maintenance and operation of the bridge.

## II. Request for Attorneys' Fees

Indiana Appellate Rule 66(E) provides that this Court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." The Johnsons request attorneys' fees pursuant to Appellate Rule 66(E), complaining that the County's "experienced and sophisticated" counsel, who were "personally involved in the *Shand Mining* decision," pursued an appeal despite being "aware of the well-established case law precedent which was unfavorable to their position." Appellees' Br. at 16. Because we have determined that the County's immunity argument prevails, we decline the Johnsons' invitation to characterize this appeal as frivolous or in bad faith as well as their request for attorneys' fees.

Reversed and remanded.

BARNES, J., and PYLE, J., concur.