

**FILED**

Feb 14 2018, 6:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Laurie D. Johnson
Alicia M. Adcock
Boje, Benner, Becker, Markovich &
Hixson, LLP
Noblesville, Indiana

James J. Shea, Sr.
Andrew S. Williams
Jeremy D. Lemon
Hunt Suedhoff Kalamaros, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Alexander P. Pinegar
Kevin S. Smith
Church Church Hittle & Antrim
Noblesville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Abigail Elizabeth Freeman Jacks, a minor, by next friends Jennifer Jacks and William Scott Freeman, and Jennifer Jacks, <br><br> *Appellants-Plaintiffs,* <br><br> and <br><br> Jennifer Edwards, <br><br> *Appellant-Defendant,* <br><br> v. <br><br> Tipton Community School Corporation, <br><br> *Appellee-Defendant.* | February 14, 2018 <br><br> Court of Appeals Case No. 80A02-1705-PL-923 <br><br> Appeal from the Tipton Circuit Court <br><br> The Honorable Thomas R. Lett, Judge <br><br> Trial Court Cause No. 80C01-1512-PL-397 |

**Barnes, Judge.**

# Case Summary

[1] In this interlocutory appeal, Jennifer Edwards and Abigail Elizabeth Freeman Jacks ("Abigail"), a minor, by next friends, Jennifer Jacks and William Scott Freeman, and Jennifer Jacks (collectively, "Jacks Family"), appeal the trial court's grant of summary judgment to the Tipton Community School Corporation ("School"). We affirm.

# Issues

[2] Edwards and the Jacks Family raise several issues, which we restate as:

I. whether the trial court properly denied the Jacks Family's motion to strike; and

II. whether the trial court properly granted summary judgment to the School.

# Facts

[3] In August 2013, the School awarded Edwards a four-year contract to transport students on a school bus route in her own bus. Edwards had previously worked as a school-employed bus driver from 2010 through May 2013 driving a bus owned by a school corporation. In November 2014, Abigail was a thirteen-year-old student and was riding home from school on a bus driven by Edwards. Abigail was sitting near the rear of the bus when Edwards drove over a dip in the road. Abigail was allegedly thrown up and into the seat in front of her causing her to sustain a lacerated pancreas.

[4] In December 2015, the Jacks Family filed a complaint against Edwards and the School. The Jacks Family alleged negligence by Edwards for operating the school bus "at an unreasonable rate of speed appropriate for the road conditions" and "failing to adequately supervise children on the bus under her care," negligence by the School "by failing to provide safe school bus transportation" and "failing to properly train and supervise Defendant Edwards," and a loss of services, expenses, and lost wages by Jennifer Jacks as a result of Edwards's and the School's negligence. Appellants' App. Vol. II pp. 17-18. In its answer, the School alleged in part that it was entitled to immunity pursuant to the Indiana Tort Claims Act, Indiana Code Section 34-13-3-3.

[5] In October 2016, the School filed a motion for summary judgment. The School argued in part that Edwards was an independent contractor, not a school employee, and that, under the Indiana Tort Claims Act, it was immune from liability for Edwards's actions. The School also argued that it was entitled to summary judgment on the direct liability negligence claim because: (1) it had no duty to train or supervise Edwards; and (2) if it did have such a duty, the undisputed material facts demonstrate that it did not breach that duty.

[6] Both Edwards and the Jacks Family filed responses to the motion for summary judgment. The Jacks Family argued that genuine issues of material fact existed regarding whether Edwards was an employee or independent contractor and whether the School properly trained and supervised Edwards. They also argued that the School could not avoid liability by delegating a nondelegable

duty to an independent contractor. Edwards argued that she was an employee of the School and that the School owed a duty of care to Abigail.

[7] The School then filed a reply brief and supplemental designation of evidence. The Jacks Family filed a motion for leave to respond to the School's reply, which the trial court granted, and they also filed a motion to strike the School's reply. The trial court denied the Jacks Family's motion to strike. After a hearing, the trial court granted the School's motion for summary judgment. The trial court certified the order for interlocutory appeal, and this court granted permission pursuant to Indiana Appellate Rule 14(B).

# Analysis

## I. Motion to Strike

[8] The Jacks Family argues that the trial court erred by denying their motion to strike the School's reply brief and supplemental designation. The trial court has broad discretion in ruling on the admissibility of evidence. *Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind. Ct. App. 2005). This discretion extends to rulings on motions to strike where a party argues that a filing fails to comply with the summary judgment rules. *Id.*

[9] According to the Jacks Family, the School was not permitted to file a reply or supplemental designation under Indiana Trial Rule 56, which governs summary judgment proceedings. They also argue that the School did not request permission to do so and did not include newly-discovered evidence in the supplemental designation. Trial Rule 56 does not specifically address reply

briefs. The Rule discusses the initial motion and responses to the initial motion. However, it also provides: "The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." Ind. Trial Rule 56(E).

[10] In *Spudich v. Northern Indiana Public Service Co.*, 745 N.E.2d 281, 285-87 (Ind. Ct. App. 2001), *trans. denied*, we addressed a similar issue. There, NIPSCO filed a motion for summary judgment, Spudich filed a response, and NIPSCO then filed a reply brief with the trial court's permission. Spudich filed a motion to strike the reply, which the trial court denied. On appeal, Spudich argued that Trial Rule 56 did not "specifically provide for the filing of reply briefs on summary judgment" and that a local rule allowing reply briefs conflicted with Trial Rule 56. *Spudich*, 745 N.E.2d at 286. We noted that Trial Rule 56 "neither expressly permits nor precludes such a reply brief." *Id.* at 287. The Rule does, however, "provide for affidavits submitted in support or in opposition to summary judgment to be supplemented or opposed by depositions, answers to interrogatories, and further affidavits." *Id.* Thus, the submission of additional evidence after the initial filings is contemplated by the Rule. We noted that the "practice of filing a reply brief on summary judgment was not unique" to that county and concluded that the local rule was not "incompatible" with Rule 56. *Id.* Consequently, we concluded that the local rule was not invalid. We also held that NIPSCO was allowed to include additional designations of evidence with the reply brief and arguments not made in its original motion. *Id.* at 288-89.

[11] Relying on *Spudich*, we reached the same result in *Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 889-90 (Ind. Ct. App. 2012), *trans. denied*. There, the insured filed a motion for summary judgment, the insurer filed a response, and the insured then supplemented her designation of evidence without obtaining permission from the trial court. The insured filed a motion to strike the supplemental designation, which the trial court denied. On appeal, we held, "[i]n the absence of any language in Trial Rule 56 explicitly prohibiting reply briefs and such designations and in light of these facts and circumstances, we cannot say the trial court erred in denying [the insured's] motion to strike." *Benko*, 964 N.E.2d at 890.

[12] Based on the language of Trial Rule 56, *Spudich*, and *Benko*, we find no error by the trial court in allowing the School's reply and supplemental designation. Trial Rule 56 does not prohibit reply briefs and specifically allows the designated evidence to be supplemented. The trial court did not abuse its discretion when it denied the Jacks Family's motion to strike.

## II. Motion for Summary Judgment

[13] The Jacks Family and Edwards argue that the trial court erred by granting the School's motion for summary judgment. Summary judgment is appropriate only when the moving party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Schoettmer v. Wright*, 992 N.E.2d 702, 705 (Ind. 2013); *see also* T.R. 56(C). Once that showing is made, the burden shifts to the non-moving party to rebut it. *Schoettmer*, 992 N.E.2d at 705-06. When ruling on the motion, the trial court

construes all evidence and resolves all doubts in favor of the non-moving party. *Id.* at 706. We review the trial court's grant of summary judgment de novo, and we take "care to ensure that no party is denied his [or her] day in court." *Id.*

### A. Immunity for Edwards's Alleged Negligence

In its motion for summary judgment, the School argued that it was immune from liability for Edwards's negligence. "Government entities and their employees are subject to liability for torts committed by them, unless one of the [Indiana Tort Claims Act "ITCA")] exceptions provides immunity." *Indiana Dep't of Transp. v. Sadler*, 33 N.E.3d 1187, 1191 (Ind. Ct. App. 2015). "Whether a government entity is immune from liability is a question of law, which we review de novo." *Id.* "Because the ITCA is in derogation of the common law, we construe it narrowly against the grant of immunity." *Id.* "The party seeking immunity has the burden of establishing that its conduct falls within one of the exceptions provided by the ITCA." *Id.*

The ITCA provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he act or omission of anyone other than the governmental entity or the governmental entity's employee." Ind. Code § 34-13-3-3(10). This subsection's immunity "applies in 'actions seeking to impose vicarious liability by reason of conduct of third parties' other than governmental employees acting within the scope of their employment." *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 481 (Ind. 2003) (quoting *Hinshaw v. Bd. of Comm'rs of Jay County*, 611 N.E.2d 637, 640-41 (Ind. 1993)). For purposes of the ITCA, an "employee" is "a person presently

or formerly acting on behalf of a governmental entity, whether temporarily or permanently or with or without compensation . . . ." I.C. § 34-6-2-38(a). However, the term does not include "an independent contractor." I.C. § 34-6-2-38(b)(1).

[16] The General Assembly has enacted a detailed statutory scheme regarding school transportation. *See* Indiana Code Article 20-27. Indiana Code Section 20-27-5-2(a) provides that "[t]he governing body of a school corporation may provide transportation for students to and from school." *Cf. Hoagland v. Franklin Twp. Cmty. Sch. Corp.*, 27 N.E.3d 737, 738 (Ind. 2015) (finding no constitutional requirement for school corporations to provide transportation to and from school). In this statutory scheme, the General Assembly differentiated between "employment contracts" and "transportation contracts" for student bus transportation. An "employment contract" is "a contract: (1) between: (A) a school corporation that owns all necessary school bus equipment; and (B) a school bus driver; and (2) that provides that the school bus driver is employed in the same manner as other noninstructional personnel are employed by the school corporation." I.C. § 20-27-2-4. On the other hand, a "transportation contract" is "a contract between a school corporation and a school bus driver in which the school bus driver promises to provide, in addition to driving services, a school bus, school bus chassis, or school bus body." I.C. § 20-27-2-12. Here, Edwards had a transportation contract with

the School.[1]  Although school bus drivers with an employment contract are employed in the same manner as other noninstructional personnel, school bus drivers with a transportation contract are not employed in this manner. Compensation for school bus drivers with a transportation contract is

> determined and fixed by the contract on a per diem basis for the number of days on which:
>
> (1)     the calendar of the school corporation provides that students are to attend school;
>
> (2)     the driver is required by the school corporation to operate the bus on school related activities; and
>
> (3)     inservice training is required by statute or authorized by the school corporation, including the safety meeting workshops required under section 9 of this chapter.

I.C. § 20-27-8-7.  Additionally, school bus drivers with a transportation contract must provide their own liability insurance, whereas the school corporation insures school bus drivers with employment contracts.  I.C. § 20-27-5-4; Appellants' App. Vol. II p. 112.

---

[1] The School notes that both Indiana Code Section 20-27-5-5(a) and Indiana Code Section 20-27-5-7 provide that such transportation contracts are entered into under Indiana Code Article 5-22.  That chapter governs public purchasing, and it does not apply to an "employment relationship between a governmental body and an employee of the governmental body."  I.C. § 5-22-1-3(4).  However, at the time Edwards entered into the transportation contract with the School in 2013, those statutes did not contain the language referencing Indiana Code Article 5-22.  Those statutes were amended in 2015 to add that language.  *See* P.L. 233-2015, § 185 (eff. July 1, 2015); P.L. 233-2015, § 187 (eff. July 1, 2015).  Consequently, we do not find the references to Indiana Code Section 5-22-1-3 pertinent here.

[17]     Based on this statutory scheme, the School argued that Edwards was an independent contractor, not an employee of the School. Consequently, the School would be immune from liability for Edwards's negligence under the ITCA. Edwards and the Jacks Family argue that we must apply the common law ten-factor test to determine whether Edwards was an independent contractor or an employee of the School. The ten factors include the following:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Mortg. Consultants, Inc. v. Mahaney*, 655 N.E.2d 493, 495-96 (Ind. 1995). The School contends the statutory scheme makes it clear that Edwards was an independent contractor, not an employee, and we "need not, and indeed should not, look to common law to make that determination." Appellee's Br. p. 25.

[18] "'An abrogation of the common law will be implied (1) where a statute is enacted which undertakes to cover the entire subject treated and was clearly designed as a substitute for the common law; or, (2) where the two laws are so repugnant that both in reason may not stand.'" *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010) (quoting *Irvine v. Rare Feline Breeding Ctr., Inc.*, 685 N.E.2d 120, 123 (Ind. Ct. App. 1997), *trans. denied*). The General Assembly's comprehensive statutory scheme regarding school bus transportation clearly differentiates between "employment contracts" and "transportation contracts." The statutory scheme makes it clear that drivers under transportation contracts are not employees of the school corporation; rather, they are independent contractors. Given the clear statutory language, we decline to apply the ten-factor common law test to differentiate between employees and independent contractors. *See Kosarko v. Padula*, 979 N.E.2d 144, 149 (Ind. 2012) (holding that "the comprehensive nature of the TPIS and the codification of two common law rules convince us that the legislature intended

the statute to be the exclusive source governing the award of prejudgment interest in cases falling within its ambit"). It is clear here that Edwards was an independent contractor. There are no genuine issues of material fact on this issue.

[19] Despite our conclusion that Edwards was an independent contractor and, thus, the School was entitled to immunity for Edwards's alleged negligence under the ITCA, the Jacks Family argues that the School owed a non-delegable duty to the students under its care. They rely on *Shand Mining, Inc. v. Clay County Board of Commissioners*, 671 N.E.2d 477, 481 (Ind. Ct. App. 1996), *trans. denied*, and *City of Vincennes v. Reuhl*, 672 N.E.2d 495, 497-98 (Ind. Ct. App. 1996), *trans. denied*, which held that, despite the ITCA's provisions, a governmental entity could be liable for an independent contractor's actions based on a non-delegable duty analysis.

[20] We rejected this argument in *Bartholomew Cty. v. Johnson*, 995 N.E.2d 666 (Ind. Ct. App. 2013). There, we noted:

> Generally, a principal who delegates a duty to an independent contractor is not liable for the negligence of that independent contractor in performing the duty. *Bagley v. Insight Communications Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995). However, an exception to this general rule exists "where the principal is by law or contract charged with performing the specific duty." *Id.* Duties that are imposed by law or contract are considered non-delegable because they are deemed so important to the community that the principal should not be permitted to transfer these duties to another. *Id.* at 587. As a result, although a principal may transfer the responsibility for

performing a duty to an independent contractor, the principal
remains liable if the duty is negligently performed.

*Johnson*, 995 N.E.2d at 675.  However, we also noted:

> Immunity assumes negligence but denies liability.  Thus, the
> issues of duty, breach and causation are not before the court in
> deciding whether the government entity is immune.  If the court
> finds the government is not immune, the case may yet be decided
> on the basis of failure of any element of negligence.  This should
> not be confused with the threshold determination of immunity.

*Id.* at 672 (citing *Peavler v. Bd. of Comm'rs of Monroe Cnty.*, 528 N.E.2d 40, 46-47
(Ind. 1988)).

[21]     Relying on our supreme court's opinion in *Hinshaw v. Board of Commissioners of
Jay County*, 611 N.E.2d 637 (Ind. 1993), and rejecting the approach taken in
*Shand Mining* and *Reuhl*, we concluded:

> [W]e find it telling that neither *Shand Mining* nor *Reuhl* mentions
> *Hinshaw* and that Indiana Code Section 34-13-3-3(10) contains no
> exceptions to its straightforward grant of immunity.  Although
> the *Hinshaw* court was not faced with a situation involving an
> independent contractor and did not use the phrase "non-
> delegable duty," that concept was at the heart of its discussion of
> vicarious liability. . . .
>
> The clear import of *Hinshaw*'s vicarious liability analysis is that
> Indiana Code Section 34-13-3-3(10) entitles a governmental
> entity to immunity from liability for a loss resulting from the acts
> or omissions of an independent contractor; that liability would
> arise only if the independent contractor had performed a non-
> delegable duty.  Indiana Code Section 34-13-3-3(10) would be

useless in situations involving an independent contractor if it did not apply to non-delegable duties, and we "presume that the legislature did not enact a useless provision." *Hinshaw*, 611 N.E.2d at 638. To the extent that *Shand Mining* and *Reuhl* conflict with *Hinshaw* on this point, we respectfully disagree with those cases. If *Hinshaw* is to be abrogated, it should be done by our supreme court. Consequently, even assuming that a non-delegable duty exists in this case, we conclude that the trial court erred in denying the County's summary judgment motion as to its immunity from liability for any of CBE's acts or omissions and therefore reverse as to that issue.

*Johnson*, 995 N.E.2d at 678-79 (footnotes omitted) (internal citation omitted). Consequently, we concluded that, where a governmental entity has immunity from the acts or omissions of an independent contractor, the non-delegable duty analysis is inapplicable.[2] We find *Johnson* persuasive here and, likewise, conclude that the non-delegable duty argument fails.[3] The trial court properly granted the School's motion for summary judgment regarding the Jacks Family's claim regarding Edwards's alleged negligence.

---

[2] The Jacks Family also relies upon *Seiwert v. Spencer-Owen Comm. Sch. Corp.*, 497 F.Supp.2d 942, 956 (S.D. Ind. 2007), which denied a school's motion for summary judgment regarding a claim of negligent supervision of a bus driver. Relying on *Shand Mining*, the court concluded that, even if the bus driver was an independent contractor, the school could still be liable under a non-delegable duty analysis. However, we have concluded that *Shand Mining* is unpersuasive here.

[3] The Jacks Family also argues that it believed Edwards to be an employee of the School rather than an independent contractor. They cite no authority, however, that their belief concerning the relationship between the School and Edwards was controlling. Consequently, this argument is waived for failure to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a).

## B. Liability for School's Alleged Negligence

[22] The Jacks Family and Edwards also alleged that the School was negligent for failing to properly train and supervise Edwards. We noted in *Johnson* that a governmental entity was not entitled to immunity if the loss "results from its own negligence. . . ." *Johnson*, 995 N.E.2d at 679. This argument concerns the School's alleged direct negligence.

[23] Prevailing on a negligence claim requires fulfillment of three elements: 1) duty owed to plaintiff by the defendant; 2) breach of duty by allowing conduct to fall below the applicable standard of care; and 3) compensable injury proximately caused by defendant's breach of duty. *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017). In the School's motion for summary judgment, it argued that it did not owe a duty to supervise or train Edwards. The School also argued that, even if it had duties to train or supervise Edwards, it did not breach its duties. We need not address the duty argument because, even if the School had a duty to supervise and train Edwards, there is no genuine issue of material fact demonstrating that the School breached its duty.

[24] In its motion for summary judgment, the School designated evidence that Edwards had obtained her CDL and had taken the annual safety course administered by the Indiana State Police; that Edwards's CDL had never been revoked or suspended, that Edwards had never been cited by the School for misconduct or received any verbal or written warnings regarding her performance; that the assistant superintendent had never considered

disciplinary action against Edwards; that no one had ever brought concerns regarding Edwards's driving to the assistant superintendent's attention; that the assistant superintendent had never received any complaints from students or parents regarding Edwards's ability as a bus driver; and that the assistant superintendent never had a reason to question Edwards's abilities as a bus driver. Consequently, the School argued that the plaintiffs could not "point to any evidence establishing a genuine issue of material fact on whether the School breached such a duty." Appellants' App. Vol. II pp. 31-32.

[25] In response, the Jacks Family designated evidence that the School had failed to maintain certain records regarding the bus drivers and, thus, failed to properly supervise its drivers. They argue on appeal that genuine issues of material fact exist regarding whether the School "maintained accurate records of its drivers and busses, including their CDL licenses, their physical exams, inspection records for driver owned buses, verification of insurance coverage, verification that drivers have completed evacuation reports, and title records reflecting ownership of driver owned buses." Jacks Family Appellant's Br. p. 41. They also argue that the School failed to keep a record of whether Edwards attended a meeting at the beginning of the school year to review the Transportation Handbook and bus transportation policies and, thus, failed to properly train Edwards.

[26] Edwards argued that the School failed to demonstrate "what training it specifically provided to Ms. Edwards" and failed to demonstrate "how it properly supervised Ms. Edwards." Appellants' App. Vol. III p. 148. On

appeal, Edwards argues that the School must "affirmatively negate the claims that it negligently trained or supervised Edwards . . . ." Edwards's Appellant's Br. p. 29.

[27] In response, the School argued that whether it kept records regarding Edwards's training was irrelevant. The designated evidence showed that Edwards completed all training required by the State of Indiana, that the School verified that Edwards completed the training, and that the School did not maintain separate copies of the records because "the State keeps these records on-line and [the assistant superintendent] can access those records anytime he wishes, making it unnecessarily redundant for the School to keep its own copies of such records." Appellants' App. Vol. IV p. 2. Further, regarding the School's supervision of Edwards, the School designated evidence that it annually evaluated her, had never received any complaints regarding her performance, and never received any information that her performance was inadequate. Consequently, the School argued that, if it had a duty to supervise or train Edwards, the undisputed evidence demonstrated that it did so. According to the School, it demonstrated "the affirmative steps it took to annually review Edwards's performance under her contract and to confirm Edwards had satisfied the myriad of state requirements put in place by the General Assembly to insure bus drivers are adequately trained in proper safety and that their buses are safe to operate on Indiana's roads." *Id.* at 5.

[28] In support of their arguments on appeal, the Jacks Family and Edwards rely on *Simpson v. OP Property Management, LLC*, 939 N.E.2d 1098 (Ind. Ct. App. 2010).

In *Simpson*, a driver was injured when a school bus collided with her vehicle. She filed a complaint against the school bus driver, the school corporation, and others. The school bus driver and the school corporation were granted summary judgment by the trial court, and this court reversed on appeal. One of the allegations in the driver's complaint was that the school was negligent "in failing to properly hire school bus drivers" and "in failing to properly train and teach school bus drivers proper procedures for preventing accidents." *Simpson*, 939 N.E.2d at 1102. This court concluded, in part, that a genuine issue of material fact existed regarding whether the school bus driver's conduct was negligent and, "because we cannot say how, if at all, [the school bus driver's] conduct was negligent, we also cannot rule out the possibility that the School District was negligent in training and hiring him." *Id.* at 1105.

[29] *Simpson* made no discussion of evidence designated in the case, and we do not find *Simpson* persuasive here. In summary judgment proceedings, the initial burden is on the movant—the School—to demonstrate the absence of any genuine issue of material fact. *Arthur v. MacAllister Mach. Co.*, 83 N.E.3d 783, 786 (Ind. Ct. App. 2017). The burden then shifted to the non-movant—the Jacks Family and Edwards—to come forward with contrary evidence showing an issue for the trier of fact. *Id.* Here, the School designated evidence that Edwards received the required training, that it annually evaluated her performance, and that it had never received any complaints about her performance. The burden then shifted to the Jacks Family and Edwards to come forward with contrary evidence showing a genuine issue of material fact.

They responded only with evidence that the School failed to keep certain records. The School responded by designating evidence that the records were maintained online by the State and that it was unnecessary for it to retain physical copies of the records. The Jacks Family and Edwards simply failed to designate any relevant, material evidence that the School failed to properly train or supervise Edwards. We conclude that there is no evidence designated showing a genuine issue of material fact that the School failed to properly train or supervise Edwards. The trial court properly granted summary judgment to the School on this claim.

## Conclusion

[30]　The trial court properly denied the Jacks Family's motion to strike and properly granted the School's motion for summary judgment. We affirm.

[31]　Affirmed.


May, J., and Altice, J., concur.